IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MACK TRANSOU,

    Petitioner,

v.                                                        Case No. 1:19-cv-01258-JDB-jay

BERT C. BOYD,

    Respondent.

ORDER TRANSFERRING PETITION IN PART TO THE COURT OF APPEALS,
DISMISSING PETITION IN PART AS UNTIMELY,
DENYING MOTION TO HOLD CASE IN ABEYANCE,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

On July 15, 2019, the Petitioner, Mack Transou, filed, in the United States District Court for the Eastern District of Tennessee, an amended pro se habeas corpus petition (the "Amended Petition") pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 21.)[1] On November 8, 2019, Pamela L. Reeves, then-Chief United States District Judge for that district, dismissed the portion of the Amended Petition relating to the inmate's habitual motor vehicle offender ("HMVO") conviction for lack of subject matter jurisdiction and transferred the remaining claims to this Court. (D.E. 26.) The surviving portions of the Amended Petition are now before the Court for disposition. Also before the Court is Petitioner's motion to hold the proceedings in this case in abeyance. (D.E. 44.) For the following reasons, the Amended Petition is TRANSFERRED IN PART to the Sixth Circuit Court of Appeals as a second or successive petition and DISMISSED IN PART as untimely. The motion is DENIED as moot.

---

[1] Record citations are to documents filed in the present case unless otherwise noted.

BACKGROUND

I.     Transou's HMVO and Rape Convictions.

    A. HMVO Case.

In March 1999, "Petitioner entered a guilty plea to driving after being declared a habitual motor vehicle offender." *Transou v. State*, No. W2005-01935-CCA-R3-HC, 2006 WL 561401, at *1 (Tenn. Crim. App. Mar. 7, 2006), *appeal denied* (May 30, 2006). He was sentenced to two years' imprisonment. *Id.* "During the Petitioner's intake, the Tennessee Department of Correction obtained a blood specimen from the Petitioner for the purpose of providing a DNA sample." *Id.*

    B. Rape Cases 1 and 2.

Transou was arrested in May 2002 for a December 2001 rape and a March 2002 rape based on a DNA match between his blood sample and semen samples recovered from the victims. *Id.* In Madison County Case No. 02-360 ("Case 1"), which involved the December 2001 rape, the "jury . . . found the Petitioner guilty . . . of one count of aggravated burglary and one count of rape[.]" *Id.* In Madison County Case No. 02-359 ("Case 2"), he was convicted of "one count of rape and one count of sexual battery arising from the March 2002 incident." *Id.* Petitioner was sentenced to an effective sentence in each case of sixteen years' incarceration. *Id.* The convictions were affirmed on direct appeal by the Tennessee Supreme Court in a consolidated appeal. *State v. Scarborough*, 201 S.W.3d 607 (Tenn. 2006). Transou's blood draw was determined to have been constitutional and his convictions supported by sufficient evidence. *Id.* at 624-25. He unsuccessfully pursued state habeas corpus relief on the ground that his convictions in Cases 1 and 2 "were obtained as a result of the illegal action of the Tennessee Department of Correction in

2

obtaining the blood sample used for identifying the Petitioner as the perpetrator of the offenses for which he was convicted." *Transou*, 2006 WL 561401, at *2.

    C.  Rape Cases 3 and 4.

In 2005, Petitioner pleaded guilty to two counts of aggravated robbery and two counts of aggravated rape in Madison County Case No. 02-338 ("Case 3") and Case No. 02-339 ("Case 4"). (D.E. 34-1 at PageID 165-68.) He reserved a certified question of law as to whether the trial court erred by failing to suppress the DNA evidence on the ground that the blood sample was the result of an unreasonable search and seizure. *State v. Transou*, W2005-02208-CCA-R3-CD, 2006 WL 3071273, at *1 (Tenn. Crim. App. Oct. 26, 2006). Transou received an effective sentence of sixteen years' imprisonment in both cases, to be served consecutively to his sentences in Cases 1 and 2. (D.E. 34-1 at PageID 165-68.) The total effective sentence was fifty years' imprisonment. (*Id.*)

While the inmate's appeal on the DNA question was pending in Cases 3 and 4, the Tennessee Supreme Court determined in Cases 1 and 2 that the taking of his DNA sample during his HMVO incarceration was not unconstitutional. *Scarborough*, 201 S.W.3d at 622-24. Petitioner's appellate counsel in Cases 3 and 4 then filed a motion to withdraw from representation, asserting that there were no meritorious issues for appellate review in light of the Tennessee Supreme Court's decision. *Transou*, 2006 WL 3071273, at *2. The Tennessee Court of Criminal Appeals granted counsel's motion and held that the trial court did not err in denying Transou's motion to suppress. *Id.* Petitioner did not file an application for discretionary review with the Tennessee Supreme Court or seek collateral relief in state court.

II.     The 2006 Federal Habeas Petition.

On November 13, 2006, Petitioner filed a pro se § 2254 habeas corpus petition (the "2006 Habeas Petition") in the United States District Court for the Middle District of Tennessee, which was later transferred to this district. (*Transou v. Brandon*, No. 1:06-cv-01245-JDT-STA (W.D. Tenn.) (the "2006 Habeas Case" or "No. 1:06-cv-01245-JDT-STA"), D.E. 4-3). The 2006 Habeas Petition asserted five claims challenging Transou's Tennessee convictions in Cases 1 and 2. (*Id.*, D.E. 37.) One of the claims challenged the DNA evidence admitted in those cases on the ground that his blood was involuntarily seized during his detention on the HMVO conviction and on two other occasions. (*Id.*, D.E. 37 at PageID 2552.)

On February 29, 2008, United States District Judge James D. Todd dismissed the 2006 Habeas Petition. (*Id.*, D.E. 37 at PageID 2558.) Judge Todd found that five of Petitioner's claims were procedurally defaulted. He also concluded that the DNA claim was without merit under the deferential standards set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) (the "AEDPA").

III.    The Amended Petition and Proceedings in the Eastern District of Tennessee.

On December 10, 2018, Petitioner filed a pro se habeas corpus petition (the "Petition") in this district using a § 2254 form. (D.E. 1.) By order dated December 31, 2018, the Court construed the Petition as challenging the State of Tennessee's application of pretrial credits to Transou's HMVO sentence and transferred the pleading to the Eastern District as a 28 U.S.C. § 2241 petition.[2] (D.E. 9.)

---

[2]The Petition was the case-initiating pleading in *Transou v. Crowell*, 1:18-cv-01240-JDB-egb (W.D. Tenn.). After the undersigned transferred the Petition to the Eastern District, and after Judge Reeves transferred a portion of the later-filed Amended Petition to this district, all

4

On April 12, 2019, Respondent filed, in the Eastern District, a motion to dismiss the Petition or, in the alternative, to transfer the pleading to the Sixth Circuit as a second or successive petition.[3] (D.E. 17.) More than three months later, the inmate filed the Amended Petition. (D.E. 21.) Judge Reeves nevertheless allowed Transou to proceed on the Amended Petition because the pleading "present[ed] Petitioner's claims in a more concise and clear manner[.]" (D.E. 25 at PageID 268.) She construed the Amended Petition as asserting the following arguments:

> . . . Petitioner seeks habeas corpus relief based on his allegation that counsel for the State of Tennessee falsified the sentencing records for his HMVO conviction in a manner that resulted in Petitioner being illegally detained for two hundred and thirty-two days and submitting his DNA. As relief, Petitioner requests that the DNA evidence against him and his resulting convictions for four charges be "dropped," his record expunged, and that the State of Tennessee not be allowed to further prosecute him for these charges.
>
> In other words, Petitioner alleges that due to the miscalculation of his pretrial jail credits, he was taken into custody for his HMVO conviction after his community corrections sentence was revoked, when he should, in fact, not have been subject to any further punishment for that conviction. Once in custody, Petitioner submitted to a blood draw, which police then used to match his DNA to other unsolved cases. Petitioner therefore asserts that the resulting convictions are invalid because they were obtained due to the miscalculation of this HMVO sentence[.]

(*Id.* at PageID 268-69 (internal record citations omitted).) The judge noted that the Amended Petition alleged that the four rape convictions resulted from the alleged improper application of pretrial credits to the HMVO sentence. Those convictions were identified in the Amended Petition only by their state case numbers.

---

documents that had been filed in No. 1:18-cv-01240-JDB-egb, and lodged in the case before Judge Reeves, were duplicated on the docket in the present case.

[3] *See* 28 U.S.C. § 2244(b).

Regarding the HMVO conviction, Judge Reeves found that Petitioner was no longer "in custody" on that offense. She therefore dismissed for lack of subject matter jurisdiction the Amended Petition's claim that pretrial credits were not properly applied to the HMVO sentence.

Insofar as the Amended Petition asserted that four convictions resulted from the alleged improper application of pretrial credits to the HMVO sentence, Judge Reeves determined that those claims "would fall under § 2254, rather than § 2241[.]" (*Id.* at PageID 271.) Furthermore, "it appear[ed]" to the judge "that Petitioner seeks to attack the same convictions in this action that he previously attacked" in the 2006 Habeas Petition and, thus, the Amended Petition seemed, at least in part, to be a second or successive petition. (*Id.* at PageID 272.) However, Judge Reeves concluded "that the Western District is in the best position to make this determination and to transfer the remaining habeas corpus claims to the Sixth Circuit as second or successive, if appropriate, as it denied Petitioner's previous § 2254 on the merits."[4] (*Id.*) The case was then transferred to this district.

## DISCUSSION

On March 18, 2020, the Court undertook a preliminary review of the portions of the Amended Petition that survived dismissal in the Eastern District. (D.E. 29.) The Court found that, to the extent the Amended Petition seeks relief from the convictions in Cases 1 and 2, it is a second or successive petition under § 2244 and must be transferred to the Sixth Circuit. That conclusion followed from the fact that those cases were the subject of the inmate's 2006 Habeas Petition that was denied by Judge Todd in 2008. The Court further determined, however, that it was not clear

---

[4]*See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (per curiam) (district courts should transfer to the appellate court second or successive petitions filed without authorization from the Sixth Circuit).

what transpired at the state court level with respect to Cases 3 and 4, and whether any convictions arising from those cases have previously been challenged in a § 2254 petition.

Therefore, in order to determine whether the claims related to Cases 3 and 4 should be transferred to the Sixth Circuit or are subject to other affirmative defenses, the Court directed Respondent to file a response to the Amended Petition, limited to that pleading's attack on those cases. Respondent was required to provide an explanation of the state court proceedings related to those matters and to assert all relevant affirmative defenses. Respondent was also ordered to file all state court documents related to those actions. The Court allowed Petitioner to file a reply.

Respondent filed the state-court record and a response on May 28, 2020. (D.E. 34-35.) Respondent acknowledges that the 2006 Habeas Case before Judge Todd did not stem from Petitioner's convictions in Cases 3 and 4, and he represents that Transou did not file a § 2254 petition challenging those convictions until he filed the Amended Petition in the present matter. He therefore posits that, to the extent the Amended Petition challenges the convictions in those cases, it is not second or successive. Respondent argues, however, that the claims related to those convictions are untimely and should therefore be dismissed.

Petitioner filed an amended reply, arguing that his claims are meritorious.[5] (D.E. 37.) He subsequently submitted a document referred to on the docket as "Request for Court to Deny State's Motion in Opposition," in which he reiterates that he should prevail "on the merit[s]" of his claims. (D.E. 41 at PageID 379.) On April 21, 2021, the inmate filed his motion to stay proceedings in

---

[5]Petitioner filed the amended reply for the purpose of correcting the "misspelling of words" in his original reply. (D.E. 37-1.)

this case on the ground that he currently has a petition for writ of error coram nobis pending in state court. (D.E. 44.) Respondent did not respond to the motion.

Respondent's representation that Transou has not previously filed a § 2254 petition challenging his convictions in Cases 3 and 4 is confirmed by the Court's search of the federal case data base. The results of the search show that Petitioner has filed numerous cases in federal court, but that he did not file an earlier § 2254 petition regarding Cases 3 and 4. Therefore, insofar as the Amended Petition relates to Transou's convictions in those cases, it is not a second or successive petition. Nevertheless, the Court agrees with Respondent that the Amended Petition's challenge to those convictions is untimely.

A § 2254 petition is subject to a one-year limitations period, commencing from four possible dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The limitations period is statutorily tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending[.]" 28 U.S.C. § 2244(d)(2). The time bar is also subject to equitable tolling where the petitioner demonstrates "that he has been pursuing his rights diligently[] and . . . that some extraordinary circumstance stood in his way and

8

prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).

The limitations period may also be "overcome" through a "gateway" claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). A valid claim of actual innocence requires a petitioner to "show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this matter, § 2244(d)(1)(A) applies, which means that the running of the federal limitations period was triggered when Petitioner's convictions became final. Transou's consolidated direct appeal in Cases 3 and 4 was denied on October 26, 2006. *See Transou*, 2006 WL 3071273, at *1. Because the inmate did not seek discretionary review before the Tennessee Supreme Court, his convictions became final on December 26, 2006, when the sixty-day period allowed for filing an application for discretionary review to the Tennessee Supreme Court expired.[6] *See Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x. 605, 609 (6th Cir. 2013) (a petitioner's conviction becomes final when the time for a direct appeal expires); Tenn. R. App. P. 11 ("The application for permission to appeal shall be filed with the clerk of the Supreme Court within 60 days after the entry of the judgment of the Court of Appeals or Court of Criminal Appeals[.]")

---

[6]The sixtieth day fell on December 25, 2006. Tennessee Rule of Appellate Procedure 21(a) provides that, when the last day of a filing period falls on a legal holiday, the period is extended to the end of the next day that is not a legal holiday. *See* Tenn. R. App. P. 21(a). Petitioner therefore had until December 26, 2006, to file an application for permission to appeal to the Tennessee Supreme Court.

9

As noted herein, Transou did not file a state post-conviction petition. His federal limitations "clock" therefore began running the next day, December 27, 2006, and expired one year later, on Thursday December 27, 2007. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (holding that, where petitioner's conviction became final on September 9, 1996, the one-year limitations period began to run the next day and, absent tolling, would have expired on September 9, 1997); *see also Merriweather v. City of Memphis,* 107 F.3d 396, 398 (6th Cir. 1997) (holding that a one-year limitations period generally "ends on the same calendar date the following year"). The inmate did not file the Amended Petition in this case until July 15, 2019. His claims are therefore untimely by more than ten years.

Petitioner has not asserted that he is entitled to equitable tolling or that he is actually innocent of the crimes of which he was convicted. The portions of the Amended Petition which relate to the inmate's convictions in Cases 3 and 4 are therefore DISMISSED as having been filed well beyond the applicable limitations period.[7]

In his motion to hold the proceedings in the present case in abeyance, the inmate alleges that he currently has a petition for writ of error coram nobis pending in the state courts. He argues that further activity in the present matter should cease until he receives a decision in his coram nobis case. Because the Court has ruled that the Amended Petition should be dismissed in part and transferred in part to the Sixth Circuit, the motion is DENIED as moot.[8]

---

[7]Even if the claims were timely, they would be denied on the merits. For the same reasons Judge Todd gave for concluding that the state courts' DNA rulings in Cases 1 and 2 were not unreasonable, the Tennessee Court of Criminal Appeals' DNA ruling in Cases 3 and 4, which relied on the earlier holdings, would likewise pass muster under the AEDPA.

[8]Petitioner's filing of a state coram nobis petition does not serve to "revive" the expired federal limitations period. *See Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).

10

For the foregoing reasons, the Amended Petition is TRANSFERRED in part to the Sixth Circuit as a second or successive petition as it relates to the convictions in Cases 1 and 2. The Amended Petition is DISMISSED as untimely insofar as it challenges Transou's convictions arising from Cases 3 and 4.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Amended Petition in part as untimely. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App.

11

P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is therefore DENIED.[9]

IT IS SO ORDERED this 14th day of February 2022.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit within thirty days.